## Toliver F. Lindsey *v.* A. C. Lindsey.

1. Sale: warranty: representations as to quality, not heard by the purchaser, not binding.—The vendor of a slave, sold at auction, is not bound by representations in relation to quality, which were made by him privately to some of the bidders, unless it appear that the purchaser heard them.
2. Same: fraudulent representation not relied on, no ground of action.— Where the purchaser of a chattel relies upon his own judgment in relation to its quality, and does not trust to the representations of the seller, he is without remedy, although such representations were false.

In error to the Circuit Court of Choctaw county. Hon. William Cothran, judge.

The plaintiff in error sued the defendant for damages for an alleged breach of the defendant's covenant of warranty of soundness of a slave, made in writing, and dated the 3d day of January, A.D. 1854.

The defendant pleaded that the warranty was made after the sale of the slave, and was therefore without consideration.

To this the plaintiff replied, that the defendant, at and before the sale, represented the said slave to be sound and healthy, and that the written warranty was made the day after the sale, in pursuance of the said representation, upon the truth of which the plaintiff relied in making the purchase.

The plaintiff, under leave granted, filed an amended complaint, in which he sought to recover damages for false and fraudulent representations as to the soundness of the slave, made by the defendant on the day of the sale, and before the plaintiff purchased.

To this the defendant pleaded a general denial, and the cause was submitted to a jury, who found a verdict for the defendant.

Upon the trial, it appeared that the defendant, on the 2d day of January, A.D. 1854, as administrator of V. M. Lindsey, deceased, sold the slave at public auction to the defendant for $895.

George Staples, a witness for the plaintiff, stated that he was present at the sale, on the 2d of January, 1854; that he went as the agent of another person, and was authorized to bid $1100 for

the boy Prince (the one purchased by plaintiff); but, upon examining him, he saw that he had an unhealthy appearance, and declined to bid more than $800. Witness asked the auctioneer if Prince was sound, and he replied, " Look, and judge for yourself." The plaintiff was standing near by, and the defendant stepped out of a room and said to witness, that the boy was sound, and had not lost a day's work on the farm during the past year. Witness did not then see plaintiff, but thought he was near enough to have heard what defendant said to witness. He could not, however, say certainly that the defendant did hear what was said. The plaintiff was blind at the time.

Frances Garrett, for the plaintiff, stated in substance the same.

Plaintiff proved by Dr. Townsend, Dr. Atkins, and several other witnesses, facts which established that the slave was unsound on the day of the sale, and was affected with a disease of which he died about two months afterwards.

Dr. Townsend also stated he was present at the sale, and heard plaintiff say, in answer to an inquiry made in reference to the health of the boy Prince, " that he was sound." He, plaintiff, seemed to predicate his opinion upon the fact that he was sound when he owned him.

Carlton Lindsey, for the plaintiff, proved that he, the plaintiff, owned the boy Prince about seven years before the sale, at which time he sold him to defendant's intestate.

James A. Cook, for the defendant, stated that he was the auctioneer, and that when Staples inquired as to the soundness of the boy Prince, that he stated in a loud voice to the crowd, and in the hearing of all present, " Look, and judge for yourselves ;" and that the plaintiff immediately replied, " that he was sound, for he had once owned him." This witness did not hear defendant say anything in relation to the soundness of the slave, and was of opinion, that if he did say anything on that subject, it was in a low tone of voice, or else he would have heard it. Witness also stated to the crowd, that Dr. Townsend was the family physician of the intestate, and that if they wanted information in relation to the health of the negro that they could apply to him, as he was present.

Another witness for the defendant stated that he heard plaintiff

say at the sale that the negro was sound, and that he heard defen-
dant say "that he was sound so far as he knew."

Several witnesses on both sides, who were present at the sale,
heard nothing said by either party in relation to the soundness of
the slave.

The plaintiff also read in evidence a bill of sale made by defen-
dant, warranting the soundness of Prince, and dated the 3d of
January, 1854.

The jury having found a verdict for the defendant, the plaintiff
moved for a new trial, which was overruled, and he excepted, and
sued out this writ of error.

*W. Brooke*, for plaintiff in error.

This is an action brought to charge an administrator personally,
on his warranty in writing, of a slave sold by him in his representa-
tive capacity. The warranty is as follows:—

"Received of T. F. Lindsey, eight hundred and ninety-five dol-
lars, for a certain negro boy Prince, which I warrant sound in mind
and body, and a slave for life. January 3d, 1854.

"A. C. LINDSEY, Admr."

The proof is this, plaintiff is, and was at the time of the sale,
stone blind. Staples, a witness for plaintiff, states that at the sale
he was standing near plaintiff; asked if the boy, who was then on
the block, was sound; the crier, Cook, replied, "Judge for your-
selves;" defendant stepped out, and said to witness that the boy
was sound, and had not lost a day's work on the farm the past
year; that plaintiff was near enough to hear. The unsoundness of
the boy is abundantly proven by Dr. Townsend and others, as well
as his death two months afterwards. In view of the fact that the
plaintiff was entirely blind, it must be supposed that he made the
purchase solely on the representation of the defendant; and if he
did, the consideration for the warranty is sufficient. The testimony
of Staples is confirmed by that of Mrs. Garrett, who heard the
representations of defendant as to the soundness of the negro.

Dr. Atkins also proves the unsoundness of the negro. Examined
him about the 20th January, a few weeks after the sale, and found

his lungs much diseased, and in his opinion, the disease must have been of at least two months' standing.

The testimony of the defence is all of a negative character, and amounts to nothing more than that the witnesses did not hear defendant make any representations as to soundness. Plaintiff himself states that the negro was sound, but predicated his statement on the fact that he had owned him about seven years before, and he was then sound. It is in proof that the defendant was the son of Vines M. Lindsey, his intestate, and an inmate of the family. His opportunities of knowing the condition of the negro were ample, and whether his representations were fraudulent or not, the unfortunate condition of the plaintiff required from him a greater degree of caution and good faith than he was ordinarily called upon to exercise. Doubtless, when defendant gave the warranty, he felt this moral obligation resting upon him. At any rate, the instrument is *prima facie* valid, and an entire want of consideration must be distinctly proven to invalidate it. No such proof has been made. This court has repeatedly held, that an administrator may bind himself personally by warranty, though not the estate. His contract of warranty, then, stands on the same footing with any other, and the burden of proof is thrown on him, and he is bound to negative all the presumptions in favor of its validity.

The verdict of the jury is manifestly against the evidence and the instructions of the court.

*F. Anderson* and *Wm. S. Yerger,* for defendant in error.

1. The proof shows that the plaintiff acted on his own judgment, and did not rely upon the assertion of defendant, even if he heard it, which is not shown. *Hall* v. *Thompson,* 1 S. & M. 444; 1 Freem. Ch. R. 241; 6 Yerger, 108; Story Eq. 207.

2. The sale was at auction, and under the order of the Probate Court. And in such a case, the maxim of *caveat emptor* is applied with the greater rigor; and as the administrator has no personal interest in the matter, the proof should be positive and clear of an intention to bind himself. *Bashore* v. *Whisler,* 3 Watts, 494; *Fox* v. *Mensch,* 3 Watts & Serg. 444; *Joslin* v. *Caughlin,* 26 Miss. R. 134; *Bingham* v. *Moxey,* 15 Illinois R. 295; *Worthington* v. *Mc-*

*Roberts,* 9 Ala. 297 ; *Corwin* v. *Benham,* 2 Ohio St. R. 36 ; *Mason* v. *Wait,* 4 Scam. 127 ; 2 Kent Com. 274.

*D. Mayes,* on same side.

HANDY, J., delivered the opinion of the court.

The only question presented in this case is, whether the defendant in error represented, at the time of the sale of the slave, that he was sound, in consequence of which the plaintiff became the purchaser.

It appears that the sale was made at public auction, and during its progress that inquiries were made in relation to the soundness of the slave, to which the auctioneer replied that persons must judge for themselves. One witness states that while the sale was going on, the defendant said to him that the slave was sound, and had not lost a day's work on the farm the past year. The witness did not see the plaintiff, but thinks he was near enough to have heard what defendant said. The plaintiff was entirely blind, and witness did not hear him say anything at the time, nor does he know that plaintiff heard what defendant said, nor did he see them together during the sale. Another witness heard inquiry made during the sale whether the slave was sound, and heard defendant say in response that he was sound. Did not see the plaintiff when he was bidding, but thinks that he was near by when the defendant made the declaration above stated. This is all the testimony in relation to representations made by the defendant to the plaintiff with regard to soundness.

Other witnesses prove, that when inquiry was made by the bystanders as to the soundness of the slave, the plaintiff immediately replied that he had once owned him, and that he was sound. Some of the witnesses, including the auctioneer, state that they did not hear any declaration made by the defendant at the sale that the slave was sound.

Upon this evidence, the jury found for the defendant, and the verdict appears to be well warranted by the testimony.

The two witnesses who testify to declarations made by the defendant, do not state that the plaintiff heard it, or that he was near enough to hear it. They did not see him at the time, and there-

fore could not state that he was near enough to hear it. They only state that they *think* he was near enough to hear the statement. This is certainly very unsatisfactory proof of the fact.

But it is highly probable that he did not hear it, as it is not stated to have been made as a proclamation to the crowd; and it was not heard by the auctioneer, who most probably would have heard it if it had been made to the crowd, or in a loud voice. But if it was heard by the plaintiff, it is clear that he was not thereby induced to make the purchase; for it is fully proved that, when the question of the soundness of the slave was raised, he declared, within the hearing of several witnesses, that the slave was sound, and stated the reasons for his opinion. He could not, therefore, have relied on any declarations made by the defendant, and must have purchased upon his own opinion.

Let the judgment be affirmed.