**UNITED STATES v. CITY OF BROOK-HAVEN et al.**

**No. 10345.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 10, 1943.

. Rehearing Denied March 17, 1943.

Francis M. Shea, Asst. Atty. Gen., David L. Kreeger and Armand B. DuBois, Attys., Department of Justice, both of Washington, D. C., and Toxey Hall, U. S. Atty., of Jackson, Miss., for appellant.

A. A. Cohn and R. L. Jones, both of Brookhaven, Miss., and Vardaman S. Dunn, Fred J. Lotterhos, Cecil F. Travis, and Ross R. Barnett, all of Jackson, Miss., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The United States sued the City of Brookhaven, Mississippi, and Roland B. Wall, who was its mayor in 1935 and 1936, to recover $40,272, with interest, alleged to have been paid out and disbursed to the City on the faith of a proposal for federal aid under the Emergency Relief Act, which proposal was on Sept. 2, 1935, made by Wall as Mayor of the City and approved by him as Local Director of Works Progress Administration, and contained the statement, known to be false, that "The Sponsor, (City of Brookhaven), proposes

a project for the erection and completion of an industrial training school for the City of Brookhaven"; the truth being that the building was to be used and was used as a factory by a private concern, and was not an eligible project under the rules and regulations of the Works Progress Administration. The answers denied there was any intent to deceive, or any actual deceit, or that either defendant got any of the money, and set up that this was one of several similar projects undertaken in Mississippi at about the same time, all of which were described as vocational training schools, but they contemplated manufactories also; that all employees in the contemplated manufacturing enterprises were to be taken from the locality and trained in the buildings, so that not only would labor be used in constructing the buildings, but jobs would be permanently provided for those industrially trained; and that the projects were well within the purposes of the Emergency Relief Act, and prohibited by no regulation of the Works Progress Administration; and that the whole plan of the Brookhaven project was well known to and understood by those dealing for the United States about the matter. The City also pleaded that no authorization from it by ordinance or minutes appeared for the making of the representation.

The case was tried by the judge without a jury, the facts being partly stipulated and there being no conflict in the evidence. It appears that early in 1935 the manager of the New Industries Division of Mississippi Power Company went to Washington with a plan to introduce industries into the State, the State being practically without any industrial development, and its farmers rapidly losing their farms. He saw Mr. Harry Hopkins, Administrator of Works Progress Administration, and explained fully to him his ideas about the rehabilitation of small farms, and especially his plan for training some of the farm workers industrially, pointing out that the temporary work projects then being carried on by W. P. A. had no permanent effect, but if the same money and labor could be put into buildings to be used for industrial training schools, the trained persons and the buildings would show for it in the future, and after enough people had been trained to man a factory the buildings could be used as factories and the trained persons would be taken from the W. P. A. relief rolls and made permanently self-sustaining. Mr. Hopkins said the plan was the best that had been presented to him, and asked if the manager had any influence with the State W. P. A. Administrator in Mississippi, and said: "Go down there and make your wants known to him on that, and we will OK them just as fast as they get to Washington." Several applications for such projects in Mississippi were made and approved and entered upon, described as vocational training schools, and with one exception, designed for ultimate use as factories. With these as precedents, Wall, as Mayor of Brookhaven, but without any formal authorization by the City Council, addressed to the local W. P. A. office in Mississippi, on a form furnished by W. P. A., a sponsor's proposal which requested that a formal application be made for an allotment of funds for this project under the rules and regulations of the Works Progress Administration in a sum of $45,466 "for the erection and completion of an industrial training school for the City of Brookhaven" as set forth therein. It stated that "a development of this type will greatly expedite the industrial expansion of Brookhaven and vicinity as well as stimulate industry by the introduction of qualified craftsmen." The money was to be paid out only on pay rolls and vouchers certified by the Works Progress Administration. Plans were attached for a single story factory building of a usual type 202 feet wide and 322 feet long. Wall approved the project as Local Director, and forwarded it to the W. P. A. State Engineer, with a letter stating that the building would be occupied and used for "a training school and manufacturing purposes". The engineer approved the application and turned it over to the State Administrator, who approved it Sept. 4, 1935. The proposal, it is stipulated, was on Sept. 16, 1935, approved in the office of the Administrator in Washington, but by whom does not appear. The City, by action of its Council, acquired a site early in November, and construction by the W. P. A. began November 25, 1935. On Nov. 29 the City Council authorized the execution of a lease to a corporation of Indiana for ten years beginning April 1, 1936, renewable for another ten years, for a dollar per year rent, for clothing manufacturing operations, using employees residing in and about Brookhaven and paying them wages above an average of $75,000 per year, the purpose being to give men and women of the community employment as well as the successful operation of the

plant, in which things the parties bind themselves to co-operate. The lease referred to a contract between the lessee and the trustees of the local Chamber of Commerce under which the lessee was to furnish three instructors who for not less than sixteen weeks would operate a training school to train local persons as employees sufficient to operate the factory. In February, it appears from letters in evidence, the Secretary of Labor, who was a member of an Advisory Committee, objected that these Mississippi vocational projects were likely to raise questions with union labor, and W. P. A. had them suspended and investigated; but after a conference with the Governor of Mississippi, there was a resumption of work, with a request for copies of all agreements with individuals, firms, or corporations as to future use and ownership of the buildings. Finally on Feb. 28, 1936, Mr. Hopkins, Administrator, telegraphed the State Administrator to discontinue work on all these buildings on the ground that they were not to be used for vocational school purposes, but "agreements have been reached without authority and without any conference with this office which would transfer these buildings either to private ownership or to lessees on nominal rental. We will not permit the continuance of projects using federal funds where local communities have entered agreements as to future ownership of and use of property by non-governmental agencies." The W. P. A. work was accordingly stopped, $40,-272 having been expended on this Brookhaven project, but no money having been paid either to Wall or the City. Public subscriptions were taken to complete the building, and the City also put into it a considerable sum of its money, besides the cost of the lot. It was completed before April 1st, the training school was run as agreed, and manufacture began and continues. Additional workers are in training all the time, but limited now to 10% of the full force under a provision of the Walsh-Healey Act, 41 U.S.C.A. §§ 35–45. More than nine hundred local workers have been trained and employed, only fifteen of the workers having come down from Indiana. The City granted a five year tax exemption to the enterprise, and has received from it in money only the nominal rental. Wall testified to his good faith, that he was following the precedent set in the other Mississippi projects in calling it a vocational

training school, that he knew and made no secret of the arrangements for manufacture, and mentioned it in his letter to the W. P. A. engineer. The engineer did not testify, but it is stipulated that he was fully informed; indeed the plans showed a factory building. The State Administrator testified that he knew all about the arrangements, that he approved the project with that knowledge; thought the project a good one then and thought so still.

The Court held that the City could speak only through its minutes and was not responsible for any deceit; that Wall and the other City officers were guilty of no fraud, but were of the honest belief, and justified in it, that the actual project was an eligible one; that it was in fact in a substantial sense a vocational training school; and the State Administrator knew all the details and approved it, and would now approve it. A formal judgment for the defendants was entered Dec. 17, 1941. On Jan. 12, 1942, a motion was made to amend the pleadings and for a different relief, particularly that an equitable lien be impressed on the factory. This motion was overruled, and formal findings of fact and conclusions of law were formulated on Feb. 7. Appeal was taken both from the judgment of Dec. 17 and that of Feb. 7.

 The original complaint was one at law for damages done by fraud and deceit. It was not necessary to its success that either the City or Wall should have gotten the money laid out by the United States. James-Dickinson Farm Mortgage Co. v. Harry, 273 U.S. 119, 123, 47 S.Ct. 308, 71 L.Ed. 569. The elements of such a tort are stated in Southern Development Co. v. Silva, 125 U.S. 247, at page 250, 8 S.Ct. 881, at page 882, 31 L.Ed. 678: "In order to establish a charge of this character the complainant must show, by clear and decisive proof—First, that the defendant has made a representation in regard to a material fact; secondly, that such representation is false; thirdly, that such representation was not actually believed by the defendant, on reasonable grounds, to be true; fourthly, that it was made with intent that it should be acted on; fifthly, that it was acted on by complainant to his damage; and, sixthly, that in so acting on it the complainant was ignorant of its falsity, and reasonably believed it to be true." If we assume, without so deciding, that the first four necessary elements of the case are made out, the fifth and sixth are not

proven. Of the persons acting for the Uniter States not one is shown to have been deceived. It is certain that the State Engineer and the State Administrator of W. P. A. were in nowise misled in approving the project, for they knew the exact intended use. It is argued only that the National Administrator, Mr. Hopkins, relied on the misrepresentation and was deceived thereby. There is no word of evidence to this effect. He is not produced as a witness. From what he said to the representative of the Mississippi Power Company it would seem that he relied entirely on the action taken by his State Administrator. On the same line we find in his published "Statement to Sponsors" of June 15, 1935, Section 10, "In no case should a project proposal be submitted direct to Washington. The Washington office will simply refer the proposal back to the local or district Works Progress Administration, with consequent delay." There is no other evidence of the State Administrator's authority. Evidently he was expected to look into the proposal, and his approval, which is the last that appears in writing on this project, meant something. He testifies he knew all, and was not deceived. If the National Administrator did not rely on the action of his State Administrator, as he said he would do, but relied instead on a statement in the project proposal, and was deceived by it, although the situation in Mississippi and the exact nature of the proposed relief in Mississippi by these vocational schools, to be turned into factories, had been fully explained to him and approved by him, that ought to have been proven. Ignoring the question whether a city, on informal misrepresentations made by its mayor, can be made liable in deceit for money it did not get, for the reason stated no case for recovery of damages for deceit is made out against either defendant. 23 Am.Jur., Fraud and Deceit, §§ 141, 143. 26 C.J., Fraud, §§ 55, 57, 58. If the law of Mississippi be of any special force, it is the same. Anderson v. Burnett, 5 How. 165, 35 Am.Dec. 425; Lindsey v. Lindsey, 34 Miss. 432; Selma, M. & M. R. Co. v. Anderson, 51 Miss. 829. The complainant must show he would not have acted as he did but for reliance on the misrepresentation. McNealy v. Bartlett, 123 Mo.App. 58, 99 S.W. 767.

■ The project, at the time it was proposed and carried out, was eligible for W. P. A. aid though involving ultimately a factory use. Aid to factories was expressly prohibited later by Section 1 of the Emergency Relief Appropriation Act of 1939, 53 Stats. 507, 15 U.S.C.A. §§ 721–728, but that was held by Attorney General Murphy not to be retroactive. 39 Op. Atty. Gen., 254. The money appropriated by Congress in Section 1 of the Emergency Relief Act of 1935, 49 Stats. 115, 15 U.S.C.A. §§ 721–728, was "to provide relief, work relief and to increase employment by providing for useful projects", and this was done in making this building. The State Administrator says it was a good project, and for aught that appears the National Administrator would say the same. There is no very apparent perversion of the Congressional bounty.

■ The motion, long after final judgment, to amend the suit into one in equity, not for damages, but for restitution and a lien because of money invested in the factory building in consequence of fraud or mistake, was rightly denied. Not only was it too late thus to add a new cause of complaint, but other parties would seem to be necessary, such as the corporation which holds a lease, and others who, like the United States, have contributed to the building. We express no opinion as to the merit of the new claim for relief. The provision of Rule of Civil Procedure 15(b), 28 U.S.C.A. following section 723c as to amendment of pleadings after judgment looks to supporting the judgment by the amendment, or to making the record show more perfectly what was really tried and decided. It does not authorize an amendment to nullify the judgment and begin a new contest.

The judgment is affirmed.

### On Petition for Rehearing.

■ The references in the opinion to a conference of the representative of Mississippi Power Company with the National Administrator are based on a deposition of the former which was certified by the clerk of the district court as a part of the record on appeal. The motion for rehearing makes the point that the stipulation under which the deposition was taken provided that the testimony "may be used upon the trial of the case and introduced in evidence by any party thereto, subject only to such objections as might be made if the deponent were present and testifying in open court," and that the transcript

of the proceedings at the trial does not show that the deposition was offered in evidence by anyone, or considered by the court, but the contrary. The stipulation, made under Rule of Civil Procedure 29, 28 U.S.C.A. following section 723c, embodies the substance of Rule 26, (d), (e), (f), as to the use of the deposition. Unless someone offered it in evidence on the trial it was not evidence in the case, nor was it proper to be transmitted as such with the record on appeal. When designated by appellees to be certified and sent up as a part of such record, appellant should have applied to the district court under the first sentence of Rule 75(h) to have the deposition excluded as not having been introduced and considered in the trial. But the inclusion of it does not justify this court in considering it, for in an equity case an appeal is not a trial de novo. We are satisfied that the deposition was not read on the trial and that the judgment was entered solely on the evidence presented by the United States. Over appellant's protest, we should consider nothing else.

This conclusion does not affect our decision. The burden was on the United States to prove that its representative relied on the misrepresentation and was deceived by it. The appellee did not have to show the contrary. By the evidence introduced, this burden was not carried.

Rehearing denied.