**In re GRIEVANCE COMMITTEE OF the UNITED STATES DISTRICT COURT, DISTRICT OF CONNECTICUT.**

**John DOE, Esquire, Appellant,**

v.

**The FEDERAL GRIEVANCE COMMITTEE, Appellee.**

**No. 508, Docket 87–6201.**

United States Court of Appeals, Second Circuit.

Argued Jan. 4, 1988.

Decided May 23, 1988.

Robert B. Fiske, Jr., New York City (James D. Liss, Sharon Katz, Davis Polk & Wardwell, New York City, Jacob D. Zeldes, David P. Atkins, William C. Longa, Zeldes, Needle & Cooper, Bridgeport, Conn., of counsel), for appellant.

**58**

James F. Stapleton, Stamford, Conn. (Stefan R. Underhill, Day, Berry & Howard, Stamford, Conn., of counsel), for appellee.

Before VAN GRAAFEILAND, WINTER and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Appellant John Doe, an attorney appearing before the district court pro hac vice, appeals from an order of the United States District Court for the District of Connecticut (T.F. Gilroy Daly, Chief Judge) which suspended Doe from practicing before any court in the District for a period of six months after finding that Doe violated Disciplinary Rule 7–102(B)(2) ("DR 7–102(B)(2)") of the Code of Professional Responsibility[1] (the "Code"). The district court's conclusion, that Doe violated the Code, was based upon evidence that Doe suspected that a witness lied at a deposition and Doe did not disclose the witness's alleged perjury to the court. Because we conclude that Doe lacked information clearly establishing the existence of a fraud on the court, we reverse.

## FACTS and BACKGROUND

The conduct which formed the basis for the district court's disciplinary decision arose during the discovery phase of an action pending before Judge Zampano in the District of Connecticut. On two occasions, Doe had conversations with his client, the plaintiff in the underlying action ("client"), concerning possible perjury by a deposition witness and subornation of perjury by attorneys representing the defendant. These conversations occurred immediately before and some time after the witness, who was an employee of defendant, testified at a deposition taken by Doe. During the first conversation between Doe and client ("conversation one") which occurred just prior to the deposition, client related to Doe a conversation client had with the deposition witness. According to client, the witness told him that defendant's attorneys had instructed him "to change his story when responding to certain questions at [his] deposition." A few months after the deposition, Doe had a subsequent conversation with client ("conversation two") where client related another conversation he engaged in with witness. During this second conversation, witness told client that he had "followed the instructions [of defendant's attorneys] and had lied in response to [those] questions [at the deposition]." Witness also told client that he nevertheless would testify truthfully at trial.

Approximately one year after witness's deposition, the substance of Doe's conversations with client was brought to the attention of Judge Zampano. After this information was received, Judge Zampano indicated to the parties that he would hold a hearing to investigate possible misconduct during discovery in the action in connection with the Doe/client conversations as well as other matters.[2] Pending resolu-

1. DR 7–102(B) of the Code provides that
   A lawyer who receives information clearly establishing that:
   (1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal, except when the information is protected as a privileged communication.
   (2) A person other than his client has perpetrated a fraud upon a tribunal shall promptly reveal the fraud to the tribunal.

2. Apparently during discovery, plaintiff had access to confidential documents of defendants. Suspecting that someone in their organization was turning over these confidential documents to plaintiff, defendant sought to discover the identity of the "mole" in their organization. Defendant's investigation was carried on to such a point that even Doe and client were questioned during their depositions regarding their knowledge concerning the existence of the mole. Both denied having knowledge of the mole's existence and stated that they had not engaged in conversations with defendant's employees outside the course of ordinary business. With this information also available to Judge Zampano, he decided to investigate possible misconduct regarding the plaintiff's use of defendant's confidential documents and whether Doe and client answered truthfully at their depositions when asked about the identity of the mole. None of these allegations of misconduct, however, is the subject of this appeal.

tion of the misconduct allegations, Judge Zampano stayed further proceedings in the underlying action. On December 18, 1984, a closed hearing was held during which client, witness and Doe testified. Client testified that he did in fact have two conversations with witness (as summarized above) and that he had reported those conversations to Doe during conversations one and two. Witness's testimony at the hearing completely contradicted client's. He stated that he never had any conversations with client regarding his deposition testimony. He also denied that he had been instructed to lie or had in fact lied at his deposition.

Finally, Doe testified at the hearing that client related his conversations with witness (in substantially the manner set forth above) and that he believed that client had those conversations with witness. With respect to the first conversation, Doe explained, however, that he gave little credence to witness's suggestion that defendant's attorneys had instructed him to lie at the deposition, primarily because he doubted that defendant's attorneys would engage in subornation of perjury and also because he felt that witness's statements to client reflected nothing more than a "layperson's [mis]interpretation of deposition preparation." With respect to conversation two, Doe stated that he had personally suspected that witness had not told the truth at his deposition, but he explained that it did not occur to him that he had an ethical obligation to report to the court this information. In fact, he believed just the opposite. Doe thought that he was ethically obligated *not to reveal* the information since it constituted privileged client confidences and/or secrets. Doe explained, however, that he would disclose the information regarding witness's possible perjury at trial, presumably to impeach witness's testimony.

Judge Zampano subsequently issued an opinion in September 1985 in which he found, *inter alia*, that, as between client and witness, "one of the two is a perjurer." Judge Zampano concluded, however, that "the special hearing was not the appropriate forum in which to resolve the conflict."

Rather, he decided that "[j]udgment on the credibility of these witnesses must be left to the usual and customary processes available to test the truthfulness of individuals' pretrial and trial statements given under oath." Thus, Judge Zampano left the question of whether perjury has been committed and by whom for determination at trial.

Despite the fact that Judge Zampano decided that the special hearing was not the "appropriate forum" for determining whether witness, or client, had engaged in perjury, he nevertheless ordered that questions regarding Doe's involvement in this matter be referred to a Grievance Committee for an investigation and recommendation as to appropriate action concerning possible ethical misconduct. Judge Zampano observed that Doe may have violated his duty under DR 7–102(B)(2) when he did not disclose to the court the information he possessed concerning witness's potential perjury and defendant's attorneys' alleged subornation of perjury.

In January 1986, a hearing was held before the Grievance Committee which was comprised of practitioners from the District of Connecticut. According to the reference from Judge Zampano, the Grievance Committee was to determine whether Doe violated DR 7–102(B)(2). Thus, the Committee necessarily had to determine whether Doe had "information clearly establishing ... a fraud on the tribunal" as a result of 1) his conversations with client and 2) his own independent information regarding evidence in the underlying action. The Grievance Committee also had to determine whether, since most of the information Doe had concerning witness's alleged perjury came from client, Doe was obligated under the Code *not* to reveal that information since it constituted privileged client confidences and/or secrets. *See* DR 4–101(B).

During Doe's testimony before the Grievance Committee, he again explained that, after he had conversation one with client, he doubted that any wrongdoing had occurred. He stated, however, that after conversation two (which occurred after Doe had taken witness's deposition), he believed that witness had lied at the deposition.

Doe explained, however, that the basis for this belief did not originate from his conversations with client, but rather was the product of his own independent conclusions drawn from his knowledge of the case:

> Well, it didn't really relate to the message that [client] related to me. I mean, as I was taking [witness's] deposition, based on other evidence in the case, either documents or testimony of dealers or [defendant's other] witnesses, there were inconsistencies. There were situations in which there was evidence that [witness] was involved in something which he was denying that he was involved—a meeting or a course of action in which [others] had testified or other [defendant's] employees testified that he was involved in which he was either not recalling or denying. So, I didn't think he was telling the truth.

Doe also stated that he felt that most of defendant's other witnesses were not telling the truth during discovery.

Also testifying before the Grievance Committee was an ethics professor from New York University. In relevant part, the professor explained that an attorney's duty to maintain his client's confidences and secrets under DR 4-101(B) overrides his obligation under DR 7-102(B) to reveal information regarding a potential fraud on the court. The professor testified further that, in order to trigger an attorney's obligation under DR 7-102(B) to disclose "information clearly establishing ... a fraud on the tribunal," he must have actual knowledge of the alleged fraud. Finally, the professor opined that nothing in the present record would have triggered Doe's duty to disclose the information regarding the potential perjury or subornation of perjury since he lacked actual knowledge.

In an opinion issued on July 2, 1986, the Grievance Committee recommended that no disciplinary action be taken against Doe and that the complaint lodged against him be dismissed. In pertinent part, the Grievance Committee concluded, first, that

> [b]ecause [Doe's] knowledge of the alleged subornation of perjury by [defendant's attorneys] and his knowledge of the

[witness's] alleged deposition perjury were based upon client confidences clearly protected from disclosure by the attorney-client privilege and, therefore, by DR 4-101(B), he had no ethical obligation under DR 7-102(B)(2) or any other disciplinary rule to reveal these alleged frauds to ... Judge Zampano[,]

and, second, that

> [e]ven if Conversations One and Two do not fall with [sic] the attorney-client privilege, [Doe] had no obligation under DR 7-102(B)(2) to reveal either conversation to the court because he did not have *knowledge clearly establishing* that [defendant's attorneys] had attempted to suborn [witness's] perjury or that [witness] in fact had failed to tell the truth at this deposition. Instead, [Doe] testified that he believed Conversation One reflected a layman's [witness's] misinterpretation of deposition preparation. With respect to Conversation Two, [Doe] *merely suspected* from his own assessment of the facts of the underlying lawsuits that [witness] and other [of defendant's] witnesses were not truthful during their deposition testimony.... Without *knowledge clearly establishing* either alleged fraud, it would have been extremely detrimental to his clients' interests in hotly contested litigation and to his attorney-client relationship for [Doe] to have attempted to prevail upon [client] to permit him to reveal his privileged communications in Conversations One and Two to the court.

After the Grievance Committee issued its unanimous decision exonerating Doe, its recommendation to dismiss the complaint came before the district court. After reviewing the transcripts of the proceedings before Judge Zampano and the Grievance Committee, the district court concluded that Doe violated DR 7-102(B)(2) and ordered that he be suspended from practice before any court in the District for six months.

## DISCUSSION

Doe's main argument on this appeal is that the district court erred in finding that he violated DR 7-102(B)(2). Specifically,

Doe argues that the district court misinterpreted the "information clearly establishing" element of the rule. Doe points out that the district court construed that term to mean "clear and convincing evidence." Doe contends instead that the proper standard is one of actual knowledge, and concludes that, under a knowledge standard, it is clear that he did not *know* that witness committed perjury. We agree.

### A. *Standard of review.*

■ Before turning to the merits of this appeal, we must first examine what is the appropriate standard governing our review of the district court's decision. A district court's decision disciplining an attorney for ethical misconduct ordinarily will not be set aside on appeal absent an abuse of discretion. *See, e.g., In Re Taylor,* 567 F.2d 1183, 1191 (2d Cir.1977); *Allegaert v. Perot,* 565 F.2d 246, 248 (2d Cir.1977); *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975). We apply this discretionary standard in recognition of the fact that "[t]he district court bears the responsibility for the supervision of the members of its bar," *Hull,* 513 F.2d at 571, and, accordingly, it must have wide discretion to maintain proper discipline.

■ There is, however, a recognized exception to this general rule. When the determination of issues presented in an appeal depends upon whether a particular ABA disciplinary rule prohibits the conduct in question, appellate review is not confined to the abuse of discretion standard. *See United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980). Because resolution of such questions "leaves little leeway for the exercise of discretion," *id.* (quoting *American Roller Co. v. Budinger,* 513 F.2d 982, 985 n. 3 (3d Cir.1975)), appellate review in those cases is plenary. *See Miller,* 624 F.2d at 1201; *United States v. Washington,* 797 F.2d 1461, 1465 n. 4 (9th Cir.1986) (reviewing de novo the question whether district court applied correct legal standard in disciplinary matter). As discussed below, the resolution of the question presented in the instant appeal turns upon an interpretation of a particular ABA discipli-

nary rule. Since resolution of this question is one which "leaves little leeway" for an exercise of discretion, we review this matter de novo.

### B. *DR 7–102(B) and the "information clearly establishing" requirement.*

■ Disciplinary Rule 7–102(B)(2) provides that, when a "lawyer ... receives information clearly establishing that ... [a] person other than his client has perpetrated a fraud upon a tribunal[, he] shall promptly reveal the fraud to the tribunal." Under this rule, an attorney's ethical duty to report a fraud on the court is triggered once he receives "information clearly establishing" the existence of a fraud on the court. The district court interpreted the term "information clearly establishing" to mean that the lawyer must have "clear and convincing evidence" that a fraud on the court has occurred before the obligation to disclose the fraud arises. Applying this standard, the district court found that, based upon conversations one and two, Doe did not have clear and convincing evidence that defendant's attorneys engaged in subornation of perjury and, thus, the court concluded that he was not obligated to disclose this information. The court also recognized that conversations one and two did not provide Doe with clear and convincing evidence of witness's alleged perjury. Nevertheless, the court concluded that Doe's subjective beliefs concerning witness's veracity coupled with the information he received from client provided him with clear and convincing evidence of witness's perjury. Accordingly, the district court found that he violated the disciplinary rule by failing to disclose the information concerning witness's alleged perjury. We disagree.

Determining whether an attorney has received "information clearly establishing" a fraud on the court—and thus triggering his duty to disclose that information to the affected tribunal—is a "difficult task." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 341 (1975). Our inquiry into the term's meaning is made even more difficult because it is not used in any other Code provision and was not in-

cluded in any provision of the Code's predecessor, the Canons of Professional Ethics (1908). Nor is the term included in any provision of the Code's successor, the Model Rules of Professional Conduct (1983), and our exhaustive research has uncovered no court or professional ethics committee decision that has definitively interpreted what the term means. Thus, we are left to examining the Code to determine the drafter's intent,[3] reviewing the context in which the term has been applied, and searching out definitions of the term adopted in other jurisdictions. We do, however, have the benefit of the ethics professor's expert opinion on this subject.

After examining the Code, we observe that in most Code provisions that obligate an attorney to take affirmative measures to preserve the integrity of the judicial system, knowledge is required before the disclosure duty arises. *See, e.g.,* DR 1–103(A) (requires that "[a] lawyer possessing unprivileged *knowledge* of a violation of DR 1–102 [ (governing attorney misconduct) ] shall report such *knowledge* to a tribunal or other authority empowered to investigate or act upon such violation") (emphasis added); DR 1–103(B) (requires that "[a] lawyer possessing unprivileged *knowledge* or evidence concerning another lawyer or judge shall reveal fully such *knowledge* or evidence upon proper request of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers or judges") (emphasis added). It therefore seems reasonable that the Code's drafters would have intended that a knowledge standard be included in DR 7–102(B)(2) before triggering its affirmative disclosure obligations.

When the ethics professor testified at the hearings before the Grievance Committee, he opined that the term "information clear-ly establishing" requires that the attorney have actual knowledge of the alleged fraud. When questioned on this issue, a member of the Committee pointed out that if the drafters of the Code had intended that a knowledge standard govern DR 7–102(B), they would have used the term "knowledge" or "actual knowledge" in the rule, as was the case in other Code provisions. The professor responded, however, that the drafter's failure to use the actual term "knowledge" in the rule reflected nothing more than poor draftsmanship rather than an intent to adopt some standard less than actual knowledge. The Grievance Committee apparently was satisfied with the professor's analysis because it agreed with his conclusions and adopted a knowledge standard for the purposes of the rule. So do we.

We note that at least one jurisdiction has endeavored to provide its attorneys with some guidance in this area. In Virginia, an attorney is required to reveal "[i]nformation which *clearly establishes* that his client has, in the course of the representation, perpetrated a fraud related to the subject matter of the representation upon a tribunal." DR 4–101(D)(1), Revised Virginia Code of Professional Responsibility (1983) (emphasis added). Included in this rule is a definition for the term "information clearly establishing" which provides that "[i]nformation is *clearly established* when the client *acknowledges* to the attorney that he has perpetrated a fraud upon a tribunal." *Id.* (emphasis added). Thus, Virginia has adopted an actual knowledge standard for determining when an attorney has received sufficient information to "clearly establish" that his client has committed a fraud.

Consistent with Virginia's approach are decisions from other jurisdictions arising in

---

**3.** The Committee which drafted the Code "intentionally compiled no record of its discussions and deliberations" because of a concern for potentially inhibiting the discussion of participants. *See* American Bar Foundation, Annotated Code of Professional Responsibility, xi (1979) ("Annotated Code"). Therefore, no comprehensive legislative history of the Code exists. *Id.*

In addition, discerning the meaning of DR 7–102(B)(2) is further complicated by the fact that that provision was not included in the preliminary draft of the Code circulated for comment. *See* Annotated Code at 306–07. Because the preliminary draft was criticized for "not requiring a lawyer to reveal misconduct of others," when the Code came out in final form, it included the obligations contained in DR 7–102(B). *Id.* Thus, it was included in the Code without being subject to public scrutiny.

the context where an attorney suspects that his client intends to commit perjury. Those cases permit the attorney to attempt to rectify or reveal the client's perjury only if the attorney has information establishing a "firm factual basis" that the client will commit perjury. *See, e.g., Whiteside v. Scurr*, 744 F.2d 1323, 1328 (8th Cir.1984), *rev'd on other grounds*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986); *United States ex. rel. Wilcox v. Johnson*, 555 F.2d 115, 122 (3d Cir.1977). As explained in *Whiteside*, "[m]ere suspicion or inconsistent statements ... are insufficient to establish that the defendant's testimony would have been false." 744 F.2d at 1328.

Our experience indicates that if any standard less than actual knowledge was adopted in this context, serious consequences might follow. If attorneys were bound as part of their ethical duties to report to the court each time they strongly suspected that a witness lied, courts would be inundated with such reports. Court dockets would quickly become overburdened with conducting these collateral proceedings which would necessarily hold up the ultimate disposition of the underlying action. We do not believe that the Code's drafters intended to throw the court system into such a morass. Instead, it seems that the only reasonable conclusion is that the drafters intended disclosure of only that information which the attorney reasonably knows to be a fact and which, when combined with other facts in his knowledge, would clearly establish the existence of a fraud on the tribunal.

■ To interpret the rule to mean otherwise would be to require attorneys to disclose mere suspicions of fraud which are based upon incomplete information or information which may fall short of clearly establishing the existence of a fraud. We do not suggest, however, that by requiring that the attorney have actual knowledge of a fraud before he is bound to disclose it, he must wait until he has proof beyond a moral certainty that fraud has been committed. Rather, we simply conclude that he must clearly know, rather than suspect, that a fraud on the court has been committed before he brings this knowledge to the court's attention.

Applying the above to the instant appeal, it becomes clear that Doe did not violate his ethical duties when he did not report to the court the information he possessed concerning witness's potential perjury. Neither the information Doe received from conversations one and two, nor his independent information concerning the facts of the case, provided him with knowledge that a fraud on the court had taken place. Although Doe's subjective beliefs may have caused him to suspect strongly that witness lied, they did not amount to actual knowledge that witness committed a fraud on the court.

## CONCLUSION

We must always be mindful that the perspective of a judge differs greatly than that of the practicing attorney. "From the perspective of [a] ... judge, ... a particular fact may be as clear and certain as a piece of crystal or a small diamond. A trial lawyer, however, must often deal with mixtures of sand and clay. Even a pebble that seems clear enough at first glance may take on a different hue in a handful of gravel." *Nix v. Whiteside*, 475 U.S. 157, 190, 106 S.Ct. 988, 1007, 89 L.Ed.2d 123 (1986) (Stevens, J., concurring in the judgment). Here, an attorney's reputation was put in question because he failed to report his suspicion that an adverse witness lied. As Judge Zampano recognized after he conducted the special hearing, the proper forum for resolving that question is not a collateral proceeding, but is the trial itself. Determining credibility is unquestionably the hallmark of the adversarial system. By awaiting trial, armed with his beliefs concerning witness's veracity and ready to impeach witness's credibility, Doe acted in a manner consistent with the traditional role of a trial lawyer. We therefore conclude that Doe violated no ethical duty by not reporting his suspicions to the court.

In view of the foregoing, we reverse the district court's order suspending Doe from practice.

**64**

VAN GRAAFEILAND, Circuit Judge, concurring:

Although I concur fully in Judge Altimari's well-reasoned opinion, I write separately because I would put the case even more strongly than he did.

Untruthful testimony by a witness, which has not been suborned by his lawyer, does not, standing alone, constitute fraud upon the court. *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir.), *cert. denied*, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972); *Bulloch v. United States*, 721 F.2d 713, 718–19 (10th Cir. 1983); *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 675 F.2d 1349 (4th Cir.1982), *cert. denied*, 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (1983). This is particularly true where, as here, the testimony is given during a pretrial deposition. Until the deposition is placed in evidence, it does not become part of the case before the court. *See Miles v. Ryan*, 484 F.2d 1255, 1261 n. 4 (3d Cir. 1973); *Demara v. Employers Liability Assurance Corp.*, 250 F.2d 799, 800 (5th Cir.), *cert. denied*, 358 U.S. 845, 79 S.Ct. 69, 3 L.Ed.2d 79 (1958); *United States v. Brookhaven*, 134 F.2d 442, 447 (5th Cir.1943).

Accordingly, even if appellant was convinced that an opposing witness had testified falsely during his deposition, DR 7–102(B)(2) did not require appellant to disclose this to the court. The drafters of the Rule must have realized that it is one thing to be convinced of something; it is another thing to prove it. I can think of no better way for a lawyer to damage his client's case than by making a pretrial accusation of perjury that he is unable to prove.