UNITED STATES of America

v.

**Fausto DEL CARPIO–COTRINA.**

No. 89–388–CR.

United States District Court,
S.D. Florida.

March 21, 1990.

Joel DeFabio, Miami, Fla., for Del Carpio–Cotrina.

Jeffrey S. Weiner, Benjamin S. Waxman, David S. Mandel, Mary V. King, Asst. U.S. Attys., for the U.S.

## MEMORANDUM ORDER

SCOTT, District Judge.

This cause is before the Court to determine whether defense counsel Joel DeFabio has breached his ethical obligations by failing to disclose to the Court that the Defendant Fausto Del Carpio–Cotrina had jumped bond and would not appear to stand trial on criminal charges.

## I. BACKGROUND

On June 30, 1989, Fausto Del Carpio–Cotrina was indicted by the grand jury on charges of conspiracy to possess with intent to distribute and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Steve Bronis appeared as defense counsel at the arraignment held on July 3, 1989. The U.S. Magistrate released Del Carpio on a $25,000 corporate surety bond, to run concurrent with a pre-existing $50,000 corporate surety bond. In addition, Del Carpio and his wife posted a $200,000 personal surety appearance bond.

On July 10, 1989, the Court set the case for a trial date of July 26, 1989. On July 18, 1989, Joel DeFabio filed his appearance and moved to be substituted as defense counsel. DeFabio stated that he had been retained by Del Carpio on July 13, 1989. The same day, DeFabio moved for a continuance of the trial date.[1]

On July 26, 1989, the Court conducted a hearing on the Defendant's motion to substitute counsel. Bronis and Del Carpio were present. DeFabio had a scheduling conflict and Leonard Farr appeared in his place. Del Carpio expressed his preference for DeFabio as defense counsel. Accordingly, the Court granted the motion to substitute counsel and continued the trial date to August 28, 1989.

DeFabio attempted to contact Del Carpio on several occasions to inform him of developments in the case, but was unsuccessful. During the first week of August 1989, Del Carpio's wife telephoned DeFabio and told him that Del Carpio had left the residence with a suitcase and that she did not know where he had gone.

DeFabio did not advise the Court of these events. Instead, three days before trial, at the calendar call, DeFabio moved for a continuance of the trial date. As grounds for the motion, DeFabio represented that he had a special trial setting in another matter in Tampa. The Court initially denied the motion, but then reset the trial date to the week of September 5, 1989 due to the Government's scheduling conflicts.

On September 1, 1989, at a second calendar call, Farr, again appearing for DeFabio, informed the Court that DeFabio had been unable to reach Del Carpio and did not expect him to appear for trial. The Court issued an Order to Show Cause ordering DeFabio to explain why he had failed to advise the Court that Del Carpio would not appear for trial. At a hearing held on September 6, 1989, DeFabio argued that he was never certain that his client would fail to appear, and therefore, under the attorney-client privilege and ethical rules governing attorneys, he had no duty to notify the court of his client's disappearance.

After the hearing, the Court ordered the Government to brief the issue, and we gave DeFabio the opportunity to respond. DeFabio, through the National Association of Criminal Defense Lawyers, filed a memorandum in response. The Court has carefully considered the arguments of counsel and we are fully cognizant of the seriousness of the issues raised. With that caveat, we proceed to the legal analysis.

## II. DISCUSSION

A. *Legal Standard*

■ Federal district courts possess "the inherent power to protect the orderly ad-

---

1. DeFabio argued that, as new counsel, he required additional time to prepare Del Carpio's defense. DeFabio further represented that he had conflicting vacation plans and a special trial setting in a separate matter.

ministration of justice and to preserve the dignity of the tribunal." *Kleiner v. First National Bank*, 751 F.2d 1193, 1209 (11th Cir.1985). Because attorneys are officers of the court, a district court is "necessarily vested" with the authority to control attorneys' conduct and impose reasonable sanctions on "errant lawyers" practicing before it. *Id.; United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir.1976). Moreover, "a district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir.1980); *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir.1976). This is true even though grievance procedures are otherwise available. *Musicus*, 621 F.2d at 744.

■ In determining whether an ethical violation has occurred, the Court should look to the controlling ethical principles of the forum state for guidance. The Rules of Disciplinary Enforcement for this district[2] direct the Court to apply the ethics rules of the State of Florida in matters concerning attorney misconduct.[3] "As the legal profession's own source of ethical standards, [state ethics rules] carr[y] great weight in a court's examination of an attor-

ney's conduct before it." *Woods*, 537 F.2d at 810. However, the Court should also strive to "preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests." *Id.*

■ The issue before the Court is whether DeFabio had an obligation to disclose that Del Carpio had jumped bond and did not intend to appear for trial. Two of the Rules Regulating the Florida Bar are relevant to this issue.[4] Rule 4–1.6(b) of the Rules Regulating the Florida Bar, known as the confidentiality rule, governs disclosure of information learned in the course of the attorney-client relationship.[5] The confidentiality rule provides:

(a) A lawyer shall not reveal information relating to representation of a client except as stated in paragraphs (b), (c), and (d) unless the client consents after disclosure to the client.

(b) A lawyer shall reveal such information to the extent the lawyer believes necessary:

(1) to prevent a client from committing a crime.

Florida Rule 4–1.6(b), Confidentiality of Information.[6]

---

**2.** "[F]ederal district courts have clear statutory authority to promulgate rules governing the admission and conduct of the attorneys who practice before them." *Greer's Refuse Serv., Inc. v. Browning–Ferris Indus.*, 843 F.2d 443, 446 (11th Cir.1988); *see* 28 U.S.C. §§ 1654 & 2071; Fed.R. Civ.P. 83. This district has promulgated the Rules of Disciplinary Enforcement for the United States District Court for the Southern District of Florida.

> For misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this Court may be disbarred, suspended from practice before this Court, reprimanded or subjected to such other disciplinary action as the circumstances may warrant.

Rule 4, part A (Standards for Professional Conduct) of the Rules of Disciplinary Enforcement for the United States District Court for the Southern District of Florida.

**3.** Rule 4, part B of the Rules of Disciplinary Enforcement for the Southern District of Florida, supplementing Rule 16(C) of the Local Rules of this Court.

**4.** The Florida Supreme Court adopted the Rules Regulating the Florida Bar, effective January 1, 1987, superseding the Florida Bar Code of Professional Responsibility previously in force. On most issues, the Rules track the American Bar Association's Model Rules of Professional Conduct, which the ABA adopted in 1983. However, the Florida Rules differ from the ABA Model Rules on certain issues, including client fraud and attorney-client confidentiality.

**5.** "The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." Rules Regulating the Florida Bar, Rule 4–1.6, Comment.

**6.** Under Rule 1.6 of the ABA Model Rules of Professional Conduct, a lawyer may reveal such information to the extent that "the lawyer reasonably believes necessary [t]o prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm." *See also* Model Code of Professional Responsibility, DR 4–101(B)(1, 2), (C)(3) (a lawyer "may reveal [t]he intention of his client to commit a crime

Rule 4–3.3 governs the lawyer's duty of "candor toward the tribunal." Under Rule 4–3.3:

> (a) A lawyer shall not knowingly:
>
> (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
>
> (b) The duties stated in paragraph (a) ... apply even if compliance requires disclosure of information otherwise protected by rule 4–1.6.

Florida Rule 4–3.3, Candor Toward the Tribunal.[7]

Thus, if a lawyer learns in the course of representation "that a client intends prospective conduct that is criminal," the lawyer "shall reveal information in order to prevent such consequences." Florida Rule 4–1.6, Comment. In addition, the lawyer must disclose confidential information when necessary to avoid assisting a criminal or fraudulent act by the client. Florida Rule 4–3.3(a)(2).

### B. *Analysis*

The Court has been unable to find any reported decisions addressing whether an attorney has a duty to advise the court that the client has jumped bond and does not intend to appear for trial. The Florida Bar has withdrawn its opinion on the issue for reconsideration.[8] However, the relevant ethical principles have been interpreted in the analogous context of client perjury.

Perjury is similar to bail-jumping in terms of ethical considerations because both crimes may interfere with the administration of justice. In addition, for both crimes, the lawyer may learn of the client's intent before the crime has been committed. At that point, as an officer of the court, the lawyer must inform the court of the client's criminal or fraudulent intent. This is especially true if counsel's silence will help the client commit the crime or fraud. Thus, Florida Rules 4–1.6(b) (duty to disclose future crimes) and 4–3.3(a)(2) (duty of candor toward tribunal) apply equally to both situations.

The definitive case on client perjury is *Nix v. Whiteside*, 475 U.S. 157, 166, 106 S.Ct. 988, 994, 89 L.Ed.2d 123 (1986). In *Nix*, the United States Supreme Court considered "the range of 'reasonable professional' responses to a criminal defendant client who informs counsel that he will perjure himself on the stand." The Supreme Court held that "an attorney's duty of confidentiality ... does not extend to a client's announced plans to engage in future criminal conduct." *Id.* at 174, 106 S.Ct. at 998.

*Nix* has been construed to require "a clear expression of intent to commit perjury ... before an attorney can reveal client confidences." *United States v. Long*, 857 F.2d 436, 445 (8th Cir.1988). We think this

---

and the information necessary to prevent the crime.").

**7.** Rule 3.3(a)(2) of the ABA Model Rules of Professional Conduct is identical. DR 7–102(B)(1) of the ABA Model Code of Professional Responsibility provides:

> [A] lawyer who receives information clearly establishing that [h]is client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, or if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal except when the information is protected as a privileged communication.

In addition, the ABA Standards Relating to the Administration of Criminal Justice, the Defense Function, Standard 4–3.7 provides:

> A lawyer may reveal the expressed intention of a client to commit a crime and the infor-

mation necessary to prevent the crime, and the lawyer must do so if the contemplated crime is one which would ... corrupt the process of the courts and the lawyer believes such action on his or her part is necessary to prevent it.

**8.** In 1973, the Professional Ethics Committee of the Florida Bar issued an opinion concluding that an attorney has an affirmative duty to inform the court that his client has jumped bail. Florida Bar Comm. on Professional Ethics, Formal Op. 72–34 (1973). The Committee relied on the ABA's Formal Opinion 155 (1936), which held that an attorney has a duty to disclose the location of a client who has fled the jurisdiction while out on bail. After the ABA Committee withdrew this opinion, *see* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 84–349 (1984), the Florida Bar Ethics Committee withdrew its opinion for reconsideration in January 1989.

reading of *Nix* is overly narrow. The Supreme Court did not limit its holding to cases in which the client is the lawyer's source of information, and we see no reason to confine *Nix* to its facts. However, we do agree that a lawyer's duty to disclose future crimes or fraud by the client depends on the lawyer's state of knowledge. In short, actual knowledge is required. *In re Grievance Committee of the U.S. District Court,* 847 F.2d 57, 63 (2d Cir.1988) (construing DR 7–102(B)(2) to require actual knowledge).[9]

"It is admittedly difficult for a lawyer to 'know' when the criminal intent will actually be carried out, for the client may have a change of mind." Florida Rule 4–1.6, Comment. Federal and state courts have agreed that actual knowledge means at least a "firm factual basis." *Long,* 857 F.2d at 445; *United States ex rel. Wilcox v. Johnson,* 555 F.2d 115, 122 (3rd Cir. 1977); *Witherspoon v. United States,* 557 A.2d 587 (D.C.Ct.App.1989); *State v. James,* 48 Wash.App. 353, 739 P.2d 1161, 1169 (1987).[10] Other courts have framed the analysis in terms of proof "beyond a reasonable doubt." *See, e.g., Shockley v. State,* 565 A.2d 1373, 1379 (Del.1989).[11] All of these courts have generally equated a firm factual basis and proof beyond a reasonable doubt with the actual knowledge standard.

The actual knowledge standard is necessary to prevent unnecessary disclosure of client confidences and to protect the fiduciary nature of the attorney-client relationship.

While defense counsel in a criminal case assumes a dual role as a "zealous advocate" and as an "officer of the court," neither role would countenance disclosure to the Court of counsel's private conjectures about the guilt or innocence of his client. It is the role of the judge or jury to determine the facts, not that of the attorney.

It is essential to our adversary system that a client's ability to communicate freely and in confidence with his client be maintained inviolate. When an attorney unnecessarily discloses the confidences of his client, he creates a chilling effect which inhibits the mutual trust and independence necessary to effective representation.

*Johnson,* 555 F.2d at 122.

Applying this standard to the record, the Court must determine whether DeFabio knew that Del Carpio had fled the jurisdiction and would not appear for trial, in violation of his bond conditions. DeFabio had attempted to reach his client on numerous occasions without success. Del Carpio's wife called DeFabio to tell him that Del Carpio had packed a suitcase and left the marital residence.[12] She did not know where he had gone. Armed with these facts, DeFabio appeared before the Court three days before trial at the calendar call and moved for a continuance of the trial date. DeFabio did not advise the Court of Del Carpio's disappearance until three days before the new trial date, at the second calendar call.

Based on this record, the Court finds that DeFabio had a firm factual basis for

---

9. One court has imposed a duty to investigate when the lawyer has "clear information" indicating crime or fraud by the client. *In re Grand Jury Subpoena,* 615 F.Supp. 958, 969 (D.Mass. 1985). However, we do not believe that the ethical rules, as written, require a lawyer to take affirmative steps to discover client fraud or future crimes. Independently, the Court is of the view that imposing a duty to investigate the client would be incompatible with the fiduciary nature of the attorney-client relationship.

10. Certainly, "[m]ere suspicion" is not enough. *Sanborn v. State,* 474 So.2d 309, 313 n. 2 (Fla. 3d DCA 1985).

11. "A number of commentators also support a reasonable doubt standard." *Shockley,* 565 A.2d at 1379 n. 7 (citing commentators). This standard is not designed to permit a lawyer "to turn a blind eye to the facts" with impunity. *Shockley,* at 1379 n. 8. However, consistent with the reasonable doubt standard of proof in criminal trials, "proof beyond a moral certainty" is not required. *In re Grievance Committee,* 847 F.2d at 63.

12. Notwithstanding the wife's disclosure, the marital residence will necessarily be forfeited to the Government in order to meet the $200,000 personal surety bond.

believing that Del Carpio had jumped bond and did not intend to appear for trial. DeFabio had been unable to contact Del Carpio since the early stages of proceedings, and could not reach him even three days before trial. Moreover, Del Carpio's wife had called DeFabio to advise him that Del Carpio had left the house with a suitcase for parts unknown. It would not be a matter of speculation to conclude that Del Carpio had fled the jurisdiction. On the contrary, these facts, taken together, provided counsel with a firm factual basis for believing that his client did not intend to appear for trial.

This factual finding requires the Court to consider a difference between the perjury and bail-jumping scenarios. In the perjury context, a lawyer who knows that his client intends to commit perjury need not advise the court until the client takes the witness stand. In the bail-jumping context, it is less certain at what point in time a lawyer must advise the court that the client intends to jump bail.

DeFabio did ultimately advise the Court of his client's intentions, three days before trial. However, he first appeared before the Court to secure a continuance of the trial date. At that time, there can be no question that DeFabio had a duty of disclosure as an officer of the Court. Even if his scheduling conflict was legitimate, DeFabio could not seek an extension of time to appear for trial when he had a firm factual basis for believing that his client would not appear for the scheduled trial date. His failure to inform the Court could only assist Del Carpio in succeeding in his efforts to elude law enforcement officers. In effect, DeFabio's attempt to secure a continuance, no matter how legitimate his motive, could only buy more time for the defendant to flee the jurisdiction.

The Court concludes that DeFabio was required to inform the Court that he had a firm factual basis for believing that his client would not appear for trial before moving for a continuance of the trial date. Disclosure was necessary to "avoid assisting a criminal or fraudulent act by the client," Florida Rule 4-3.3(a)(2) and "to pre-vent a client from committing a crime," Florida Rule 4-1.6(b). We do not believe that this holding creates a conflict for an attorney between his duties to a client and to the court. "The duty of a lawyer to his client and his duty to the legal system are the same: to represent his client zealously within the bounds of the law." *Sanborn v. State*, 474 So.2d 309, 312 (Fla. 3d DCA 1985).

### III. CONCLUSION

Although the Court has determined that DeFabio's conduct was not consistent with his obligations as an officer of the Court, we recognize that the state of the law, as developed in the case law and ethics opinions, has been uncertain. Perhaps counsel should have remembered that discretion is the better part of valor. Nonetheless, the Court will stay its hand and no sanctions will be imposed. However, this Memorandum Order will be published so the defense bar will be put on notice of this ethical obligation in like situations. It is so ordered.

DONE and ORDERED.