## In re Taylor.

June 22, 1945.

Eldon S. Dummit, Attorney General, for State Bar Commissioners.

J. H. Taylor and Hiram H. Owens for respondent.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Disbarring respondent.

The Board of Bar Commissioners has recommended that the respondent, Jay H. Taylor, of the Bell County Bar, be disbarred from the practice of law upon the grounds that (1) he has been convicted of a felony, and (2) he had aided in the perpetration of a fraud on the court. A number of other charges were made involving the respondent's negligence and unfaithfulness to his clients and certain unethical practices. There is also some evidence of public drunkenness. However, these other charges were dismissed by the trial committee of the Bar Commissioners either because not sustained or not of sufficient consequence to justify action.

The first of the counts or grounds upon which disbarment is recommended presents an unusual condition. In February, 1917, the respondent was convicted of voluntary manslaughter and sentenced to the penitentiary for an indeterminate period of five to six years. He had been previously found guilty of murder in the case but the judgment was reversed because of erroneous instructions. Taylor v. Commonwealth, 172 Ky. 136, 188 S. W. 1087. It appears that notwithstanding the requirement of Section 97 of the Kentucky Statutes (now Ky. Rev. Stats. 30.100) he was not disbarred as a practicing attorney. About a year later Taylor was pardoned by Governor Stanley for the assigned reasons that the killing grew out of a bitter political campaign; the accused had been deprived of the benefit of certain evidence, and many people had requested that he be pardoned. Afterward, in 1921, Taylor was disbarred by the Harlan Circuit Court for obstructing justice in having hired witnesses not to appear against a client in a criminal prosecution, and this Court affirmed the judgment of disbarment. Taylor v. Commonwealth, 192 Ky. 410, 233 S. W. 895. Six years later, in February, 1927, Taylor sought reinstatement in the Harlan Circuit Court. The record in this present proceeding shows that evidence was heard by an investigating committee of the bar, concerning the conviction of the felony and the pardon. It does not appear that the cause for which the court had previously disbarred him was considered. It seems that objections to his reinstatement were withdrawn. An order of the court was entered reinstating Taylor as a member of the bar. The trial committee of the Board of Bar Commissioners expressed the opinion that his conviction of a felony constituted an irrevocable barrier to reinstatement; that the Harlan Circuit Court did not have jurisdiction to enter the order, hence that its judgment is void and not res adjudicata. Apparently, the full Board of Bar Commissioners, which reviewed the recommendation of the committee, concurred in that view.

The second ground upon which the respondent's disbarment is recommended also presents novel and peculiar circumstances.

On August 18, 1943, a suit was filed in the Bell Circuit Court by Nellie Taylor against the respondent as defendant alleging their marriage and seeking a di-

vorce from him. He was served with summons that day, and the next day, August 19th, he was present when the plaintiff gave her deposition in which she swore that they had been married in Knoxville. He caused or permitted to be put in the record the statement that he had no defense to make and declined to cross-examine the plaintiff. On August 30th the respondent took the record to the Circuit Judge in Harlan, where he lived, with a letter from the woman's attorney, with whom the respondent had often been associated in the practice, requesting that the decree be dated back to August 19th, the day the deposition was given. A deputy circuit court clerk testified that the endorsement by the judge on the record that a divorce was to be granted may have been dated August 19th, although he hadn't paid much attention to it. When he declined the respondent's request that the judgment be entered eleven days back, because there were three intervening pages of orders and it would have "messed up" the book, the respondent took the record away and he had not seen it since. No judgment of divorce was ever entered. The respondent had married another woman on August 25th. On this proceeding he testified that he had boarded with Nellie Epperson (plaintiff in the divorce suit) about two years and for some unaccountable and unfounded reason it had been rumored in the community they were married; that she had suggested that she sue him for divorce because "that will make it all right and keep down suspicion and protect my reputation;" and that he had consented to the proceeding for that reason. He testified that she had been in a hurry to get the decree as she was going to Detroit, where her daughters were, and "wanted to submit it for judgment on account of some property rights." He happened to be going to Harlan to attend to some other business on August 30th and the plaintiff's attorney, W. L. Hammond, asked him to take the record to the judge as he had promised his client he would have the case submitted immediately. Mr. Hammond's letter stated that Mr. and Mrs. Taylor were having some trouble and that legal ground for divorce had been proved, and that he would like that the order go as of the date the deposition was filed "as it was understood by the parties that I would carry the papers to Harlan on that date but I could not get away from home." The endorsement of the judge on the record shows that the date "August 30th" had

been changed by a pen to the 19th. No effort was made to prove whether this was changed by the judge or another. The respondent never told the judge that he and the plaintiff were not husband and wife, nor did he reveal that fact, or claimed fact, to Mr. Hammond until some time after the divorce proceeding had been submitted..

We pass over as unnecessary the consideration of the first ground upon which the recommendation that the respondent should be disbarred and the complex legal questions which it presents, deeming the second ground alone as requiring his disbarment.

There is no occasion to hunt through the lawbooks for authorities to support the conclusion that the conduct of the respondent was reprehensible and in violation of his obligation as a member of the bar. He is guilty of deceit and assisting to perpetrate a fraud upon the court. There is no condonation. The respondent's explanation for the collusion is weak, that it was to favor the woman seeking to dissolve a marriage to himself which he says never occurred, and this for the ridiculous reason that she wanted to have some sort of property right adjusted. Is this conduct not as reprehensible as knowingly exhibiting to the court false and fraudulent affidavits in order to obtain some advantage for a client; or knowingly and deliberately presenting perjured testimony; or having a certificate to a legal paper falsely executed? These have been deemed sufficient causes for disbarment. 5 Am. Jur., Attorneys at Law, Secs. 262, 263; Annotation 14 A. L. R. 868; Rice v. Commonwealth, 57 Ky. 472, 18 B. Mon. 472; Davis v. Commonwealth, 223 Ky. 90, 2 S. W. 2d 1038; In re Gilbert, 274 Ky. 187, 118 S. W. 2d 535. The respondent not only sat by and permitted the evidence which he now says is false to be presented without denial, but actually presented the record to the court, and then sought to secure the entry of the judgment of divorce eleven days before the court had read the record and concluded that the decree should be granted. His marriage to another during that intervening period is extremely significant. Then when the clerk declined to enter it as desired, he abstracted the record and kept it until sometime during the inquiry by the Board of Bar Commissioners into the charge of unprofessional conduct when he returned it to the clerk's office. If this woman was in fact his wife, then this con-

duct which prevented the entry of the divorce decree according to the court's order is perhaps a greater turpitude.

As was well said in People ex rel. Atty. Gen. v. Beattie, 137 Ill. 553, 574, 27 N. E. 1096, 1103, 31 Am. St. Rep. 384, a lawyer "owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession. He is an officer of the court,—a minister in the temple of justice. His high vocation is to correctly inform the court upon the law and the facts of the case, and to aid it in doing justice and arriving at correct conclusions. He violates his oath of office when he resorts to deception, or permits his clients to do so." And as was observed by Chief Justice Marshall in Ex parte Burr, 9 Wheat. 529, 530, 6 L. Ed. 152: "On one hand, the profession of attorney is of great importance to an individual, and the prosperity of his whole life may depend upon its exercise. * * * On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved."

When a lawyer enters into such practices as are admitted and proved in this proceeding, he should expect that the courts will protect themselves and the members of the bar who appreciate the responsibilities of their profession from such conduct.

The rule issued against the respondent to show cause why the recommendation and report of the Board of Bar Commissioners should not be confirmed is made absolute. The report is confirmed and an order will be entered disbarring the respondent from the practice of law in the Commonwealth.

Whole Court sitting.